UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LOUANN S. REHWALDT,

                              Plaintiff,

       v.                                    DECISION AND ORDER
                                                              95-CV-876A

ELECTRONIC DATA SYSTEMS,

                              Defendant.

---

## INTRODUCTION

Currently before the Court is a motion by the defendant, Electronic Data Systems ("EDS"), to exclude a statistical analysis prepared on behalf of the plaintiff, Louann Rehwaldt. For the reasons stated, the motion to exclude is granted.

## BACKGROUND

The statistical evidence at issue is a multiple regression analysis[1] prepared by Mark P. Zaporowski, Ph.D., and Larry Lichtenstein,

---

[1] A multiple regression analysis is a statistical test which identifies factors, called independent variables, that might influence the outcome of an observed phenomenon, called a dependent variable. In the employment discrimination context the dependent variable is the

Ph.D., in July 2000.  Plaintiff seeks to introduce the report as evidence in support of her claim that:  (1) her former employer, EDS, paid her less wages than men for performing equal work, in violation of the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d), and (2) EDS engaged in a "pattern and practice" of paying female employees less than male employees for performing equal work, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. seq. ("Title VII"), and the New York Executive Law, § 296.

      The stated purpose of the analysis is to determine whether the defendant's compensation of its employees discriminates against females in Western New York.  See Report, at 2.  The report analyzed records for EDS employees in Western New York from 1985 to 1999.  In preparing their report, Drs. Zaporowski and Lichtenstein relied upon a database that was prepared by the plaintiff based upon the defendant's discovery responses.  Drs. Zaporowski and Lichtenstein assumed the accuracy of the database and did not make any independent inquiry as to the veracity of the

---

employment decision, such as hiring, promotion, termination.  The statistician identifies legitimate factors that could have influenced the decision (e.g., education and experience), and determines *via* multiple regression analyses how well these legitimate factors account for the employment decision.  In this manner the influence of a protected characteristic on the employment decision can be statistically isolated.  See Smith v. Xerox Corp., 196 F.3d 358, 363, n. 3 (2d Cir. 1999); Ottaviani v. State Univ. of New York, 875 F.2d 365, 366-67 (2d Cir. 1989).

information contained therein.

In performing the multiple regression analysis, Drs. Zaporowski and Lichtenstein identified factors that they believed were relevant to EDS's compensation decisions. Specifically, the analysis identifies education, performance review, tenure and job code[2] as possible independent variables that could account for the disparities in male and female salaries. With respect to job code, however, the report found that, because EDS had so many job codes (approximately 195), the number of people in each job code in Western New York at any given time was relatively small. Drs. Zaporowski and Lichtenstein found that it was "not reasonable to present annual male-female mean compensation levels for each of the 195 job codes." Report at 4. Accordingly, the report analyzed only one job code -- job code 30530 -- because that was the only job code that comprised more than ten percent of the sample. Id. More specifically, job code 30530 comprised 23.4 percent of the sample.[3] Id. Job code 30530 was held by Systems Engineers. It is undisputed that plaintiff Louann Rehwaldt was

---

[2] Job code refers to the "numerical designation give to each position offered at EDS". See Second Aff. of Marina M. Walker, at ¶ 5. Each employee of EDS was assigned a job code. The job code "generally reflects the employee's duties and responsibilities," see Dkt. No. 145, at Exh. G, (Aff. of Richard Stilson, at ¶ 11), but does not reflect whether two individuals are preforming the same job. See id. at Exh. E (Deposition of James Cahill, at 49).

[3] Therefore, the statistical analysis excluded 77 % of the sample. See Report, at 5.

never assigned job code 30530 and never worked as a Systems Engineer.

According to Drs. Zaporowski and Lichtenstein, their multiple regression analysis provides "strong statistical evidence that [EDS]'s pattern of employee compensation discriminated against their female employees in Western New York over the period 1985-1999." See Report at 13.  The defendant has moved to exclude the report on the ground that the analysis contained therein is not probative of Louann Rehwaldt's Equal Pay Act or disparate treatment claims.

## DISCUSSION

A fundamental problem with plaintiff's statistical evidence is that it fails to analyze the job code that she herself held.  Plaintiff commenced employment with EDS in 1985 as a Data Preparation Clerk.  In 1988, she was reassigned to the position of Data Security Support Administrator.  In 1992, plaintiff's job title was reclassified to Information Security Analyst.  She remained an Information Security Analyst until November 1997, when she voluntarily resigned.

The statistical evidence that plaintiff seeks to introduce does not include a multiple regression analysis of her position, Information Security

Analyst. Instead, the multiple regression analysis was performed as to one only job code, Systems Engineer – 30530, which plaintiff never held. The statistical report therefore does not show that pay disparity between men and women within plaintiff's job code. Absent that analysis, it is difficult to see how the evidence is relevant to her claims.

The report is clearly not relevant to plaintiff's Equal Pay Act claim since it does not show whether she herself was being paid less than a male employee for performing substantially equal work. Indeed, plaintiff's expert admitted that the regression analysis does not show whether a particular woman is being paid less than a particular man for substantially equal work, see Depo. of Dr. Zaporowski, at 102, or whether there exists a large number of women who are being paid less than men for substantially equal work. Id., at 104. Therefore, the report has no probative value with respect to plaintiff's Equal Pay Act claim.

Plaintiff argues that the regression analysis is relevant to her claim that EDS had a "pattern and practice" of paying women less than men in violation of Title VII. To establish a "pattern and practice" of wage discrimination, the plaintiff must show more than the mere occurrence of isolated, accidental, or sporadic discriminatory acts. She must show that

5

gender discrimination was the company's "standard operating procedure" rather than the unusual practice.  <u>Int'l Bhd. of Teamsters v. United States</u>, 431 U.S. 324, 336 (1977).  By definition, it takes more than one unlawful practice to constitute a "pattern" of employment discrimination.  <u>United States v. Fresno Unified School Dist.</u>, 592 F.2d 1088, 1096, n.5 (9th Cir.), <u>cert. denied</u>, 444 U.S. 832 (1979).

Plaintiff's statistical report does not provide evidence that EDS had a "pattern and practice" of wage discrimination.  The report performed a regression analysis of only *one* of the 195 job codes utilized by EDS.  That analysis considered only 23 percent of the sample, thereby excluding almost 77 percent.  <u>See</u> Report, at 5.  It is difficult to see how this statistical sample would be sufficient to demonstrate a "pattern and practice" of intentional discrimination.  <u>Int'l Bhd. of Teamsters</u>, 431 U.S. at 340, n.20 (observing that a small sample size may detract from the probative value of statistical evidence).

Further, much of the data considered by the report was outside the relevant time period.  The statute of limitations for Title VII is 300 days prior to the filing of Rehwaldt's EEOC charge, or February 24, 1994, three years prior to the filing of her complaint on her New York State claim, and

either two or three years prior to her EPA claim.[4]  Therefore, at best, Rehwaldt's claims encompass the time frame from October 1992 to November 1997.  However, the statistical analysis considered records from 1985 to 1999.  The analysis included data from 7 years before plaintiff's cause of action arose, and two years after she left EDS's employment.  While evidence of discrimination predating the statute of limitations may sometimes be admissible as background evidence, Fitzgerald v. Henderson, 251 F.3d 345, 365 (2d Cir. 2001), this Court has the discretion to determine whether such evidence is admissible under the ordinary evidentiary standards of probity and prejudice.  Malarkey v. Texaco, Inc. 983 F.2d 1204, 1211 (2d Cir.1993).  The inclusion of so much data outside the relevant time frame reduces the probative value of the evidence and increases the possible prejudicial effect.

      Even more importantly, however, is the fact that the plaintiff herself never held the only position that was analyzed.[5]  Perhaps an

---

[4] The statute of limitations for an EPA claim is two years from the date the action was filed, unless the plaintiff has shown that the EPA violation was willful, in which case the statute of limitations is three years.  This action was filed on October 5, 1995.  Here, plaintiff claims that the EPA violation was willful.

[5] It is not clear why an analysis of plaintiff's job code was not performed.  The report states that, because "the number of employees per job code, per year, is very small . . . it is not reasonable to present annual male-female mean compensation levels for each of the 195 job codes."  Report, at 4.  It is not clear whether this means that the numbers were too small to yield a statistically significant result, or whether performing an analysis for each of the 195 job codes

inference of discrimination could be drawn if the statical analysis had demonstrated a pay disparity between men and women within *multiple* job codes. That is, even if a statistically significant result could not be determined from analyzing plaintiff's job code, one might still be able to draw an inference of discrimination if the regression analysis had demonstrated that women were being paid less than men in *multiple* job codes, and that the disparity could not be explained by non-discriminatory factors such as education, performance review and tenure. However, plaintiff's regression analysis does not show that. Instead, it simply shows that a pay disparity exists between men and women within the job code of Systems Engineer.[6]

Where, as here, the regression analysis that was performed was limited to only one of the 195 job codes used by the defendant and it excluded almost 77 percent of the relevant sample including plaintiff's own job code, the Court finds that a reasonable jury simply could not infer a pattern and practice of discrimination based upon this statistical evidence.

---

was simply too burdensome.

[6] To the extent that plaintiff's reply brief suggests that a regression analysis was performed using her job code, or any of EDS's other job codes, that is simply incorrect. In fact, the report concedes that it was "not reasonable" to analyze all 195 job codes, Report, at 4, and instead focused on only one, job code 30530. Id. at 6.

That is, the fact that a pay disparity exists with respect to Systems Engineers does not make it "any more or less probable" that plaintiff herself was subject to discrimination, or that a pattern and practice of wage discrimination existed.  See McReynolds v. Sodexho Marriott Servs., Inc., 349 F. Supp. 2d 1, 22 (D. D.C. 2004) ("In its most basic form, the inquiry is whether the statistical analysis is reliable enough to make the existence of any fact that is of consequence more or less probable.") (internal quotations omitted).  Because the evidence does not raise the inference of discrimination, it not relevant to plaintiff's pattern and practice claim.[7]

## CONCLUSION

For the reasons stated, the Court finds that the plaintiff's multiple regression analysis should be excluded because it will not assist the trier of fact in determining the existence of any fact that is of consequence.   Furthermore, to the extent that the analysis has any probative value, it is substantially outweighed by the danger of unfair

---

[7] Nor would this evidence be relevant to plaintiff's individual claim of disparate treatment in violation of Title VII or § 296 of New York's Executive Law.  For the reasons explain above, the statistical evidence at issue does nothing to show that *this* plaintiff, Louann Rehwaldt, was subject to wage discrimination.

prejudice to the defendant, confusion of the issues and the potential for misleading the jury.[8]


IT IS SO ORDERED

                                                    /s/ Richard J. Arcara

HONORABLE RICHARD J. ARCARA
CHIEF JUDGE
UNITED STATES DISTRICT COURT


Date:   July 13, 2005

---

[8] EDS also argues that the regression analysis is flawed because: (1) it was compiled using a database that plaintiff herself constructed, without any regard to whether that information was reliable; and (2) it failed to consider whether the individuals within the Systems Engineer job code were performing substantially equal work. In light of the Court's ruling, these alternative arguments need not be addressed.